**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-11-0000048**
**21-NOV-2012**
**10:24 AM**

NO. CAAP-11-0000048

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
FAUSTINO TRANSFIGURACION, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NO. 09-1-00126K)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Fujise and Ginoza, JJ.)

Defendant-Appellant Faustino Transfiguracion
(Transfiguracion) timely appeals from the Final Judgment and
Sentence, which were entered on November 22, 2010 in the Circuit
Court of the Third Circuit (circuit court),[1] convicting him of
two counts of Continuing Sexual Assault Against a Minor Under the
Age of Fourteen in violation of Hawaii Revised Statutes (HRS)
§ 707-733.5 (Supp. 2005)[2] and three counts of Sexual Assault in
the Third Degree against a minor under fourteen in violation of
HRS § 707-732(1)(b) (Supp. 2011).[3]

_____

[1]     The Honorable Elizabeth A. Strance presided.

[2]     In relevant part, HRS § 707-733.5 states, "(1) Any person who: (a)
[e]ither resides in the same home with a minor under the age of fourteen years
or has recurring access to the minor; and (b) [e]ngages in three or more acts
of sexual penetration or sexual contact with the minor over a period of time,
but while the minor is under the age of fourteen years, is guilty of the
offense of continuous sexual assault of a minor under the age of fourteen
years."

[3]     HRS § 707-732(1)(b) states, "(1) A person commits the offense of
sexual assault in the third degree if . . . (b) [t]he person knowingly
subjects to sexual contact another person who is less than fourteen years old
or causes such a person to have sexual contact with the person."

Transfiguracion asserts two points of error, asking the court to vacate his convictions and remand his case for a new trial. First, he argues that the circuit court erred in admitting the testimony of Dr. Alex Bivens (Dr. Bivens), the State of Hawaiʻi's (the State) expert witness, because it (a) was irrelevant, (b) not the proper subject of expert testimony as it did not assist the jury in comprehending something not commonly known or understood, (c) improperly bolstered the complainants' credibility and profiled Transfiguracion as a child molester, and (d) was not offered in compliance with Hawaii Rules of Evidence (HRE) Rule 702 or 701. Second, Transfiguracion contends that the circuit court erred in admitting an alleged prior bad act because (a) the evidence was not relevant and (b) its admission constituted an abuse of discretion pursuant to HRE Rules 403 and 404.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, as well as the relevant statutory and case law, we resolve Transfiguracion's points of error as follows:

(1)(a) Each challenged aspect of Dr. Bivens's testimony – i.e., his discussion of external statistics and case studies –  is relevant because it provided the jury with context to evaluate the behavior of the minor complainants where the normal indicia of reliability might not apply. See State v. Batangan, 71 Haw. 552, 557-58, 799 P.2d 48, 51-52 (1990); State v. Rinehart, 8 Haw. App. 638, 649, 819 P.2d 1122, 1128 (1991); State v. Moisa, 126 Hawaiʻi 266, 269 P.3d 801, No. 30712 2012 WL 247963 at *2 (App. Jan. 25, 2012) (SDO) (approving Dr. Bivens's expert testimony in which he discussed studies and research relating to child sexual molestation). Transfiguracion's conclusory assertion that the testimony is not relevant does not explain why this case is distinct from these authorities. Accordingly, the court rejects Transfiguracion's argument that Dr. Bivens's discussion of external statistics and

2

case studies was irrelevant as to whether Transfiguracion sexually abused the complainants.

(1)(b) Tranfiguracion argued to the circuit court that Dr. Bivens's testimony was not relevant but focused on its reliability and whether specific aspects of Dr. Bivens's report addressed material myths or public misconceptions related to a child's response to sexual abuse. It is only on appeal that Transfiguracion first raises the issue of the continuing factual vitality of Batangan's holding regarding the existence of myths and public misconceptions related to a child's response to sexual abuse. Regardless of the standard of review, Transfiguracion's argument fails.

First, even if the circuit court were to credit Transfiguracion's unsubstantiated assertion that the news and entertainment media depict child sex abuse and delayed reporting on a regular basis, it does not necessarily follow that there has been any change in the public's understanding of the psychological effects of childhood sexual abuse. Likewise, a juror's exposure to childhood sexual abuse (whether through personal or secondhand experience) does not necessarily imply that a juror would not be aided by expert testimony that speaks to the psychological effects of such experiences. Supporting the point that there was no obvious error, courts routinely permit expert testimony on the subjects covered by Dr. Bivens, implicitly finding that the issues remain outside the common understanding of a lay jury. See, e.g., Moisa, SDO at *2.

Second, Transfiguracion's requested relief -- a new trial in which the trial court assesses the current social backdrop in assessing the average juror's knowledge of child sex abuse and the phenomenon of delayed disclosure -- highlights the absence of facts upon which this court could base a decision reversing the circuit court. In the civil context, courts in this jurisdiction take into account whether consideration of the issue not raised at trial requires additional facts when determining whether to exercise their discretionary powers to

3

notice plain error. See State v. Fox, 70 Haw. 46, 56 n.2, 760 P.2d 670, 676 n.2 (1988). While this principle might have less applicability in the criminal context, it must retain some force for the rational, efficient functioning of the judiciary.

Third, giving Transfiguracion a second bite at the apple when he did not raise the specific issue below would effectively require trial courts to sua sponte conduct HRE Rule 104 hearings as to the current state of a lay jury's knowledge about any subject upon which expert testimony was proffered. Such a rule would be inconsistent with HRE Rule 102, which provides that the "rules shall be construed to secure . . . elimination of unjustifiable expense and delay." HRE Rule 102.

(1)(c) Transfiguracion did not demonstrate that Dr. Bivens's testimony improperly bolstered the complainants' credibility or profiled Transfiguracion as a child molester.

To the bolstering argument, in Batangan, the Hawai'i Supreme Court recognized that expert testimony tends to bolster the credibility of one witness over another but that this alone does not make the evidence inadmissible. 71 Haw. at 558, 799 P.2d at 52. Accordingly, here, the inquiry is not merely whether Dr. Bivens's testimony might have had a tendency to bolster the complainants' testimony but, instead, whether Dr. Bivens's testimony drew inferences and conclusions from the studies and connected them to the facts of the particular case in a manner that usurped the role of the jury. See id. Transfiguracion does not identify any place in the record in which Dr. Bivens testified about this particular case. To the contrary, Dr. Bivens explicitly stated that he had no knowledge about the facts of the case, was not there to vouch for the credibility of any of the witnesses, and was only there to give a general overview of the scientific literature on sexual abuse of children. This is quite unlike the testimony of the State's expert in Batangan, in which he was asked to evaluate the complainant's credibility and only minimally discussed general principles of social or behavioral science. See Batangan, 71 Haw. at 562, 799 P.2d at

54; cf. State v. Morris, 72 Haw. 527, 528-29, 825. P.2d 1051, 1052 (1992) (finding error where expert witness opined that child in the case had been chronically sexually abused). Accordingly, Dr. Bivens's testimony did not usurp the role of the jury by improperly bolstering the credibility of the complainants. See Moisa, SDO at *2 (rejecting defendant's appeal where Dr. Bivens discussed studies and research relating to child sexual molestation but defendant failed to cite any evidence that Dr. Bivens offered an opinion regarding the complainant or that Dr. Bivens's testimony served to improperly bolster the complainant's credibility); State v. Behrendt, 121 Hawai'i 260, 218 P.3d 387, No. 29191 2009 WL 3653563 at *2 (App. Nov. 4, 2009) (SDO) (approving Dr. Bivens's testimony and noting that it could be distinguished from the testimony at issue in Batangan because Dr. Bivens never endorsed the complainant's version of events but merely opined on general conclusions drawn from studies of sexual abuse).

Moreover, the effect of adopting Transfiguracion's argument would be to hold that, if the alleged behavior of a defendant in a sexual abuse case involving a minor is consistent with the findings of general scientific studies on child molesters, then expert testimony on those studies is impermissible. Such a proposition is inconsistent with the controlling case law of this jurisdiction. Id.

Transfiguracion also fails to demonstrate that Dr. Bivens's testimony improperly profiled Transfiguracion as a child molester. First, Transfiguracion misstates the record. The circuit court did not agree that Dr. Bivens's testimony had the effect of profiling Transfiguracion by comparing him to a prototypical offender. Rather, the circuit court asked the State if that was the argument that it was trying to make. Second, the testimony had legitimate purposes, including educating the jury about common practices of child molesters that might explain delayed reporting on the part of the victims. See Batangan, 71 Haw. at 557-58, 799 P.2d at 51-52; see also Oregon v. Stafford,

157 Or. App. 445, 454, 972 P.2d 47, 52 (Or. Ct. App. 1998) (permitting use of expert testimony about grooming behavior as relevant to issue of defendant's intent); Hernandez v. Texas, 973 S.W.2d 787, 790 (Tex. Crim. App. 1998) (permitting use of expert testimony regarding grooming to show plan, preparation, opportunity, an absence of mistake). Third, Dr. Bivens did not explicitly draw any connections between Transfiguracion's behavior and the findings of the study, which would be a clear indication that the jury had been invited to profile Transfiguracion as a sex offender. Fourth, Transfiguracion points to no evidence that the jury actually employed the checklist method other than its ultimate decision. Transfiguracion's argument fails because the fact that the jury convicted Transfiguracion does not, as a matter of logical necessity, imply that the jury used Dr. Bivens's testimony as a checklist of behaviors that profiled Transfiguracion as a child molester. The jury's ultimate decision might not have been based on Dr. Bivens's testimony at all given that the minor complainants testified as to Transfiguracion's charged conduct.

Also, again, given the record evidence, to credit Transfiguracion's argument would effectively create a rule that bars expert testimony about general characteristics of offenders, which is not consistent with the relevant case law. See generally State v. Machado, 109 Hawaiʻi 424, 434-35, 127 P.3d 84, 94-95 (App. 2005) (approving admission of expert testimony that consistently referred to men as batterers and women as victims in a domestic abuse case); see also Behrendt, SDO at *2 (holding, under the plain error standard, that Dr. Bivens's testimony did not amount to a profiling of defendant as a sex offender where Dr. Bivens conceded on cross-examination that there was no scientific way to identify a sexual abuser and the State merely referenced Dr. Bivens's testimony to explain the progression of abuse that developed between the defendant and complainant). Instead, the key is to examine whether such testimony is being offered as substantive evidence of a defendant's innocence or

guilt or if it has an alternate, legitimate use (e.g., providing necessary background for direct evidence). See generally U.S. v. Lui, 941 F.2d 844, 847-48 (9th Cir. 1991) (discussing use of drug courier profile). And, in this case, there is nothing in the record to suggest that Dr. Bivens's testimony was offered as substantive evidence of Transfiguracion's guilt while, on the other hand, it had legitimate uses.

Transfiguracion's arguments that Dr. Bivens's testimony bolstered the complainants' credibility or profiled him as a sex offender both ultimately go to whether Dr. Bivens's testimony was more prejudicial than probative. To this more general notion, Transfiguracion also contends that Dr. Bivens's testimony regarding a study involving incomplete disclosure further inflamed the passions and prejudices of the jury against Transfiguracion because the statements might have created the impression that the complainants had not disclosed the full extent of the abuse. Transfiguracion argues that there was no offsetting probative value because the comments did not explain why child abuse victims delay disclosure or make the ultimate issue in the case more or less likely.

To reiterate, as discussed above, Dr. Bivens' testimony did not improperly bolster the complainants' credibility or profile Transfiguracion as a sex offender. In addition, the issue of incomplete disclosure fits with delayed reporting and inconsistency in that it provides the jury with context to evaluate the behavior of the minor complainants where the normal indicia of reliability might not apply. See generally Batangan, 71 Haw. at 557-58, 799 P.2d at 51-52. Thus, the circuit court did not commit reversible error by permitting Dr. Bivens's testimony after implicitly balancing its probative value and its prejudicial effect. See generally State v. Iaukea, 56 Haw. 343, 349, 537 P.2d 724, 729 (1975) ("The responsibility for maintaining the delicate balance between probative value and prejudicial effect lies largely within the discretion of the trial court.").

(1)(d)   Rule 701 restricts a lay witness from offering opinions other than those which are "rationally based on the perception of the witness" and "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."  HRE Rule 701.  The State does not contend that Dr. Bivens's testimony was admissible under HRE Rule 701.  Rule 702 provides for the admission of expert testimony where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue" and the witness is "qualified as an expert by knowledge, skill, experience, training, or education."

It is only on appeal that Transfiguracion argues that Dr. Bivens's testimony was improper because he was not formally qualified as an expert by the circuit court.  However, Transfiguracion does not question whether Dr. Bivens's credentials qualify him as an expert or whether his methods are inadequate.  Additionally, Dr. Bivens's testimony demonstrated that he was an expert by virtue of his knowledge, skill, experience, training, or education.  Moreover, Dr. Bivens has been qualified an expert in this state. See, e.g., State v. Behrendt, 124 Hawai'i 90, 105-106, 237 P.3d 1156, 1171-1172 (2010); State v. Silver, 123 Hawai'i 299, 233 P.3d 719, No. 29060 2010 WL 2637778 at *12 (App. Jun. 30, 2010) (mem.), judgment affirmed in relevant part, 125 Hawai'i 1, 2, 249 P.3d 1141, 1142 (2011).  Given these factors, any error in allowing Dr. Bivens's testimony without formally qualifying him as an expert did not affect the fairness, integrity, or public reputation of the judicial proceedings. See State v. Metcalfe, No. 30518, 2012 WL 1071503, at *3-*6 (App. Mar. 30, 2012), certiorari granted, No. SCWC-30518, 2012 WL 3217676 (Aug. 8, 2012).

Transfiguracion's reliance on State v. Torres, 122 Hawai'i 2, 222 P.3d 409 (App. 2009), is misplaced.  First, in Torres, the defendant objected to the ostensible expert witness's qualifications prior to his testimony.  122 Hawai'i at 27 n.10, 222 P.3d at 434 n.10.  Here, it is only on appeal that

Transfiguracion first raises the related issue as to whether Dr. Bivens needed to be formally qualified as an expert by the court. Second, the putative expert witness in Torres admitted that he lacked the necessary credentials and expertise to qualify as an expert. See id, at 31, 222 P.3d at 438, corrected on other grounds by, 125 Hawai'i 382, 262 P.3d 1006 (2011). As discussed above, Dr. Bivens has been found to have the necessary credentials and expertise to qualify as an expert.

Moreover, if the court were to find in favor of Transfiguracion, it would effectively be imposing a categorical rule that the circuit court must formally qualify a witness as an expert, even where no objection has been made and it is clear that the circuit court has implicitly determined that a proffered witness qualifies as an expert. Again, such an inflexible approach seems inconsistent with HRE Rule 102. See HRE Rule 102; see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999) ("The trial court must have the same kind of latitude in deciding how to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides whether or not that expert's relevant testimony is reliable.") (emphasis omitted); Ohio v. Frazier, 873 N.E.2d 1263, 1286-1287 (Ohio 2007) (holding that state's failure to tender forensic scientist as expert "was of no legal consequence" based on the expert's qualifications); North Carolina v. Wise, 390 S.E.2d 142, 148 (N.C. 1990) (holding that a trial court's overruling of defense counsel's objection to the opinion testimony constituted an implicit finding that the witness was an expert).

(2)(a) Rule 404(b) of the HRE prohibits the use of evidence of other crimes, wrongs, or acts "to prove the character of a person in order to show that he acted in conformity therewith." As the Hawai'i Supreme Court explained, "[U]nder Rule 404(b), any purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered solely to prove character." State v. Clark, 83 Hawai'i

289, 301, 926 P.2d 194, 206 (1996) (emphasis and citation omitted). Accordingly, the inquiry here is whether there was a permissible use for the evidence of Transfiguracion's uncharged bad act, basically collapsing the HRE 404(b) and relevance inquiry into one.

In the underlying proceeding, directly before Child 1 testified as to the uncharged prior bad act, the circuit court instructed the jury that the evidence may only be considered on the issue of motive and opportunity. In its final jury instructions, the circuit court instructed the jury that the evidence may only be used to prove motive, opportunity, or intent. In both instances, the circuit court cautioned that the testimony could not be considered as evidence of Transfiguracion's bad character.

Child 1's testimony regarding Transfiguracion's uncharged prior bad act was relevant because it helped to explain why her sister, Child 2 (one of the complainants), delayed reporting the abuse and why Transfiguracion called the police when confronted by Child 2 (i.e., the testimony illustrated that inappropriate touching was part of the household environment). See Oregon v. Hall, 814 P.2d 172, 175 (Or. Ct. App. 1991) (approving admission of evidence that defendant had sexual relations with mother of his two grandchildren who he was accused of abusing because the evidence was relevant to explain the delayed reporting by children).

The evidence also helps explain why Transfiguracion had the opportunity to engage in the charged acts without being reported. See Behrendt, 124 Hawai'i at 105-06, 237 P.3d at 1171-72. Although Transfiguracion attempts to distinguish the instant case from Behrendt by noting that the prior bad act in that case involved the same complainants, that distinction is not persuasive given that Child 1 and Child 2 were sisters and lived in the same house, making them very similarly situated. See Soper v. Alaska, 731 P.2d 587, 590-91 (Alaska Ct. App. 1987) (approving admission of testimony regarding prior bad acts where

complaining witness's sisters were allegedly seduced under similar circumstances, noting that the witnesses had "highly relevant common characteristics"); see also South Carolina v. McClellan, 323 S.E.2d 772, 774 (S.C. 1984) (holding that testimony from the complainant's sisters was admissible as evidence of a common plan or scheme in trial for criminal sexual conduct with a minor where all three sisters were attacked by defendant beginning around their twelfth birthday, late at night, at which time defendant quoted the same bible verse).

Following this same reasoning, Child 1's testimony regarding Transfiguracion's uncharged prior bad act also was legitimately related to motive. See State v. Torres, 85 Hawai'i 417, 422, 945 P.2nd 849, 854 (App. 1997). The same pattern of behavior also arguably speaks to Transfiguracion's intent as the practice is consistent with the notion of grooming—an act that speaks to premeditation. See McClellan, 323 S.E.2d at 774.

The circuit court did not err in admitting Child 1's testimony of Transfiguracion's uncharged prior bad act because the evidence was relevant and was not used for a purpose prohibited by HRE Rule 404(b).

(2)(b) Rule 403, HRE, provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In assessing whether the evidence's "probative value is substantially outweighed by the danger of unfair prejudice," courts employ a balancing test that considers factors such as:

> the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the . . . time that has elapsed between [them], the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

State v. Pinero, 70 Haw. 509, 518, 778 P.2d 704, 711 (1989) (quoting E.W. Cleary, McCormick on Evidence § 190, at 565 (3d ed. 1984)).

11

In its pre-trial order addressing the admission of testimony regarding Transfiguracion's uncharged prior bad acts, the circuit court undertook the appropriate HRE Rule 403 balancing analysis. Transfiguracion presents no analysis or directly-applicable authorities for his contention that the circuit court's balancing was an abuse of discretion. On the other hand, the State and the circuit court articulate coherent reasons for the circuit court's conclusion that the ultimate balance between probative value and prejudicial effect tilted in favor of admitting Child 1's testimony regarding Transfiguracion's uncharged prior bad act, focusing on the contextual similarity of the act to the charged offenses, its probative value, and the less serious nature of the bad act (which, in turn, reduces its prejudicial effect). Accordingly, we conclude there was no reversible error in the circuit court's HRE Rule 403 balancing. See Torres, 85 Hawai'i at 423, 945 P.2d at 855 (finding no reversible error when review of case revealed circuit court's reasonable consideration of HRE Rule 403 balancing factors).

Therefore,

IT IS HEREBY ORDERED that the November 22, 2010 Final Judgment and Sentence entered by the Circuit Court of the Third Circuit is affirmed.

DATED: Honolulu, Hawai'i, November 21, 2012.

On the briefs:

Jon N. Ikenaga,
Deputy Public Defender,
for Defendant-Appellant.

Linda L. Walton,
Deputy Prosecuting Attorney,
County of Hawai'i,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge

12